**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| FRANK WILSON JR, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 05-1210-MLB |
| | ) | |
| SEDGWICK COUNTY BOARD | ) | |
| OF COUNTY COMMISSIONERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Before the court is defendant's motion for summary judgment (Doc. 56) and plaintiff's motion for leave to amend the pretrial order (Doc. 59). The motions have been fully briefed and are ripe for decision. (Docs. 57, 60, 61, 62.) Defendant's motion is GRANTED and plaintiff's motion is DENIED for the reasons stated herein.

**I.  FACTS**

This case arises under 42 U.S.C. § 1983[1] and is based on two separate incidents occurring in Wichita, Kansas in November and December 2004. Plaintiff Frank Wilson Jr. brings suit against defendant Sedgwick County Board of County Commissioners ("Commissioners") alleging the use of excessive force and an illegal search and seizure in violation of his constitutional rights.

The following facts are uncontroverted. Plaintiff, who was

---

[1] Plaintiff's complaint also alleges state law claims for assault and battery, breach of duty, negligent training, and intentional infliction of emotional distress. Defendant's motion, however, seeks summary judgment only on the section 1983 claims and moves the court to decline to exercise pendent jurisdiction over the state law claims.

seventeen years old at the time, attended a party at an acquaintance's home on November 4, 2004.  Plaintiff was drinking alcohol at the party and was intoxicated.  Sometime thereafter, law enforcement officers with the Sedgwick County Sheriff's Office arrived and a deputy spoke with plaintiff, obtaining his name, address, and date of birth.  Once the deputy realized plaintiff was underage and intoxicated, the deputy told plaintiff he "was going to jail."  Plaintiff reacted to this statement by running from the deputy into a wooded area, with the deputy chasing after him.  Plaintiff claims he was tackled from behind, rolled over onto his stomach, and handcuffed.  Plaintiff further claims he was hit three times on the head, both with a fist and with something "pretty hard."  Plaintiff states that someone told him he was hit with a flashlight.

On December 11, 2004, the Sedgwick County Sheriff's Office received a call of a disturbance with a weapon at a home in Wichita, Kansas.  The caller gave information to dispatch that he believed one of the individuals involved was "Frank Wilson."[2]  Dispatch also heard glass breaking while they were on the call.  A sergeant with the Sedgwick County Sheriff's Office proceeded to the location given to dispatch and while in that residence observed a fresh blood trail. The sergeant also observed a broken window with a hammer and a two-way radio lying on the ground beneath it.  The sergeant then proceeded to

---

[2]  Plaintiff objects to this fact as set out in defendant's motion for summary judgment solely on the basis that the assertion is hearsay and would have to be proved through an affidavit by the speaker.  To the contrary, the statement is not hearsay.  It is not being offered to prove that "Frank Wilson" was at the scene of the disturbance, but is offered only to show why law enforcement officers proceeded in the manner they did.

the Frank Wilson[3] residence.  Dispatch called the residence and instructed the occupants to come outside.  At about the same time, plaintiff was in the living room of his home when he noticed "cop" cars on the road coming toward his home.  Plaintiff and his family, upon receiving the phone call from dispatch, walked outside.  By this point, members of the Goddard police force, Goddard SWAT, Kansas State Troopers, and Cheney police force were outside the Frank Wilson home with weapons drawn.  All the occupants of the home were handcuffed and remained handcuffed throughout the duration of the incident.  Law enforcement officers did not inform plaintiff why he was being handcuffed.  Plaintiff's clothes were inspected for the presence of blood.  The entire length of time plaintiff was "seized" outside his home was an hour and a half.

Plaintiff's claims have been brought against the Sedgwick County Board of County Commissioners.  The Sedgwick County Sheriff's Office has policies governing its law enforcement activities, including those that govern the use of force.  The policy in place in November and December 2004, applicable to all employees of the Sedgwick County Sheriff's Office, states that "[d]epartmental personnel may use the amount of force reasonably necessary to effect a lawful objective. Excessive and indiscriminate use of force is prohibited and will be disciplined accordingly."  The policy also states:

> Departmental personnel may only use as much force
> as is reasonably necessary to:
>     1.    Detain an offender, make the physical
>           arrest, and maintain custody;

---

[3]  Plaintiff's father's name is Frank Wilson; plaintiff is Frank Wilson Jr.  The residence at issue in the December 2004 incident was rented by plaintiff's father, Frank Wilson.

                    2.     Overcome resistance;
                    3.     Gain entry in a lawful manner; or
                    4.     Protect the deputy and/or others.

The policy also includes the following provisions:

          The provisions of this policy do not distinguish
          between adults and juveniles.  Regardless of age
          of a suspect, deputies must reasonably believe
          that other alternatives have been exhausted or
          would   be   ineffective   under   the   particular
          circumstances before using force.

          Handcuffs, restraint devices, flashlights, etc.,
          are not intended as offensive weapons and will
          not be used as such.   This provision does not
          prohibit the use of such items if alternatives
          are reasonably believed to be ineffective.

These policies are defined by the Sedgwick County sheriff, reviewed

by the sheriff, and enforced by the sheriff.  Any violations of these

policies are investigated by the sheriff and any discipline resulting

therefrom is imposed and enforced by the sheriff.  The law enforcement

policies governing the sheriff's office are not authorized, approved,

or reviewed by defendant.   The deputies involved in the incidents

underlying these claims have read and are familiar with the above

policies.

     Training of Sedgwick County deputies and sergeants is also

determined by the sheriff and is not authorized or approved by

defendant.  All individuals involved in the incidents underlying these

claims have received training within the sheriff's department on

determining the appropriate level of force to be used.  Sedgwick

County law enforcement officers are instructed to use force in a

continuum, which is comprised of six levels of resistance and five

levels of control.   All law enforcement officers in the sheriff's

department also receive training as to the legal requirements for

-4-

valid searches and seizures.

## II.   MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists "so that a rational trier of fact could resolve the issue either way" and "[a]n issue is 'material' if under the substantive law it is essential to the proper disposition of the claim."  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If so, the court cannot grant summary judgment.  Prenalta Corp. v. Colo. Interstate Gas Co., 944 F.2d 677, 684 (10th Cir. 1991).

Defendant moves for summary judgment, claiming that it is shielded from liability under section 1983 unless plaintiff shows either an "official policy or custom" or a "failure to train" by defendant that caused his injury.  Defendant asserts it has no policy-making or training authority over the Sedgwick County Sheriff's Office employees, precluding such a showing by plaintiff.  Plaintiff responds by acknowledging his burden, but he does not dispute defendant's averments regarding its authority.  Indeed, plaintiff argues that

because defendant did not have a policy or training specifically regarding the treatment of minors, the "result is deliberate indifference to the Fourth Amendment right of minors."

Pursuant to 42 U.S.C. section 1983, any person who "under color of . . . [law] . . . subjects, or causes to be subjected, . . . any [person] . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  Section 1983 was enacted to provide protections to those persons wronged by the misuse of power.  While the statute itself creates no substantive civil rights, it does provide an avenue through which civil rights can be redeemed.  See Wilson v. Meeks, 52 F.3d 1547, 1552 (10th Cir. 1995).

A local government, however, "may not be sued under section 1983 for an injury inflicted solely by its employees or agents."  Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978).  Rather, a municipality may be liable for a section 1983 claim for the actions of law enforcement officers only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id.  State law determines who has authority to make policy in a particular area.  City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) (plurality opinion).  See also Randle v. City of Aurora, 69 F.3d 441, 448 (10th Cir. 1995)(requiring examination of the "legal chain of authority" to determine who holds final policymaking authority); Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988) (holding that when state law vests responsibility in the sheriff "for the conduct of his deputies," the sheriff is accountable

in a section 1983 action, not the county commissioners).

Kansas statutes do not give policymaking authority to the Commissioners, but rather place such authority on the sheriff, an elected official.  Kansas counties derive their power under the home rule statutory scheme, located at K.S.A. 19-101 et seq.  "Home rule powers are those granted . . . by legislative act to units of local government to transact local business and perform such local and administrative duties as these local units may deem appropriate. . . . Counties in Kansas are empowered to transact all county business . . . subject, however, to the prohibitions set forth in [K.S.A. 19-101a]."  Board of Lincoln County Comm'rs v. Nielander, 275 Kan. 257, 62 P.3d 247 (2003).  Section 19-101a states that county commissioners cannot "exempt from or effect changes to" K.S.A. 19-805.  Section 19-805 governs the powers given by legislature to a county sheriff.  The county sheriff is authorized to "appoint, promote, demote and dismiss" his deputies and the sheriff "is responsible . . . for the default or misconduct" of his deputies.  K.S.A. § 19-805(a).  Kansas statutes also clearly provide that county sheriffs are independent elected officials of the county.  See K.S.A. § 19-801a.

The Kansas Supreme Court has interpreted these statutory sections, and has held that a "sheriff is an independently elected officer whose office, duties, and authorities are established and delegated by the legislature.  The sheriff is not a subordinate of the board of county commissioners and neither are the undersheriff or the sheriff's deputies and assistants."  Nielander, 275 Kan. at 261.  The court went on to note that "the sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature

-7-

and are coextensive with the county board.  The undersheriff and the sheriff's deputies and assistants are subordinates of the office of sheriff."  Id.  It is clear therefore, that only the sheriff, not the commissioners, has the power to set policy and train under Kansas law.[4]  Thus, plaintiff's claim against defendant based on an execution of policy by defendant that allegedly caused his injuries must fail. Defendant had no authority to make such a policy.[5]

Plaintiff next seeks to establish municipal liability under section 1983 based on the training of the deputies by defendant. Municipal liability under section 1983 based on training arises "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality."  City of Canton v. Harris, 489 U.S. 378, 388 (1989).  Further, a plaintiff must not only prove that the training program was insufficient but also that the failure to train is the cause in fact of resulting harm.  Id. at 391.  Again, plaintiff's section 1983 claims against defendant must fail.  As discussed above

---

    [4]  This finding is also supported by Lee v. Wyandotte County, Kansas, 586 F. Supp. 236 (D. Kan. 1984).  In Lee, a group of jail inmates brought suit under section 1983 against the Board of County Commissioners of Wyandotte County and claimed they were entitled to relief after being shot by a deputy of the Wyandotte County Sheriff's Department.  Id. at 237.  Lee held that "the Board of County Commissioners has no authority to supervise, discipline, or remove the sheriff or his subordinates . . . [and] the conduct of the sheriff and his subordinates cannot be attributed to the county commissioners." Id. at 238-39.

    [5]  In fact, plaintiff does not claim that defendant had such authority.  Plaintiff designates as uncontroverted the following statement by defendant: "The policies of the Sedgwick County Sheriff's Office governing law enforcement activities, including the use of force, are put into effect by the Sheriff without any enabling or authorizing resolution from the Sedgwick County BOCC [Board of County Commissioners], and the policies are not reviewed or approved by the BOCC."  (Doc. 57 at 2 (emphasis added).)

Case 6:05-cv-01210-MLB   Document 63   Filed 10/03/06   Page 9 of 14


with regard to policies, defendant has no authority or responsibility for the training of the sheriff or his deputies.[6]

Plaintiff does not address defendant's argument that it had no authority to make governing policy or provide training. Rather, plaintiff devotes his responsive brief to the argument that the November and December 2004 incidents show "a deliberate indifference on the part of the city to the children the deputies come in contact with because there is an intentional deprivation by the deputies of the children's Fourth Amendment rights, and the policies of the department do not even address this issue, let alone attempt to cure it." Plaintiff appears to be arguing that the lack of a policy for the use of force on minors caused him constitutional harm. Not only does this argument have no bearing on the issue of whether defendant can be subject to liability for having authority over the deputies, plaintiff fails to appreciate the substance of the policies in place. The policies state that they do not differentiate between adults and minors and thus apply equally to both.[7] Specifically, the policy states that "[r]egardless of age of a suspect, deputies must

---

[6] Again, plaintiff seems to agree that defendant does not have such authority. Plaintiff designates as uncontroverted the following factual statement by defendant: "In addition to the certified training required by state law, deputies and sergeants appointed by the sheriff of Sedgwick County receive training determined to be necessary by the Sheriff and his designees. The training is not authorized or approved by the BOCC [Board of County Commissioners]." (Doc. 57 at 3 (emphasis added).)

[7] It is reasonable to the court that the policy of the Sedgwick County Sheriff's Department does not distinguish between adults and minors. The policies in place are based on a reasonable and necessary standard placed on a continuum, rather than a concrete criterion-based approach. What is reasonable and necessary under the circumstances will of course depend on the age of the person for which the use of force is necessary.

-9-

reasonably believe that other alternatives have been exhausted or would be ineffective under the particular circumstances before using force." This policy statement is an unambiguous, specific prohibition against the use of excessive force on a minor. Any argument, therefore, that the policies of the sheriff's department "do not address the issue" is simply untenable.

Defendant has shown that no policy or training for which it was responsible caused injury to plaintiff subjecting it to suit under section 1983. Because defendant cannot be held liable for the injuries plaintiff is claiming, defendant's motion for summary judgment is GRANTED and the section 1983 claims brought against it are dismissed.[8]

## III.   MOTION TO AMEND PRETRIAL ORDER

Plaintiff moves the court to amend the pretrial order, entered after conference between both parties, on April 26, 2006. Plaintiff seeks modification of the pretrial order to add two individual deputies as defendants. Federal Rule of Civil Procedure 16(e) states that:

> [a]fter any conference held pursuant to this rule, an order shall be entered reciting the action taken. This order shall control the subsequent course of the action unless modified by a subsequent order. The order following a final pretrial conference shall be modified only to prevent manifest injustice.

As the Tenth Circuit has clearly stated, "[a]n order entered pursuant

---

[8]   Defendant also argues that because it is a municipality, it is immune from punitive damages under section 1983 based on K.S.A. § 75-6105(c). Because the court grants defendant's motion for summary judgment on plaintiff's section 1983 claims, the court need not address the issue.

to Rule 16(e) supersedes the pleadings and controls the subsequent course of litigation." E.g., Tyler v. City of Manhattan, 118 F.3d 1400, 1403 (10th Cir. 1997) (citing Hullman v. Board of Trustees, 950 F.2d 665, 668 (10th Cir. 1991)).

As expressly stated by the federal rules, a pretrial order will "be modified only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The burden of demonstrating manifest injustice falls on the party moving for modification. Koch v. Koch Industries, Inc., 203 F.3d 1202, 1222 (10th Cir. 2000). A reviewing court considers four factors regarding amendment of pretrial orders: (1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order. See Koch, 203 F.3d at 1222.

The original complaint in this action was filed July 6, 2005. In the court's initial scheduling order on September 30, 2005, the parties were apprised of many deadlines for the resolution of this case. Included in the scheduling order was the deadline for motions for leave to join additional parties, which was set for October 30, 2005. Discovery in this matter has been completed.

In support of his motion, plaintiff asserts that he is not seeking further discovery and that defendant "will not have to change or alter their preparation in any way as the parties being added form the core of the original complaint. Adding the parties will prevent the case from being dismissed on a technicality." Plaintiff also states that allowing amendment would "promote judicial economy by

-11-

allowing the case to proceed without disrupting the orderly and efficient trial" because "there will only be the addition of parties to the case that are already involved, not an inclusion of a new issue."  Finally, plaintiff asserts he has not proceeded with undue delay and has proceeded in good faith.

Defendant responds that the first three Koch factors cut strongly against amending the pretrial order.  With regard to prejudice, defendant asserts that it has structured its dispositive motion on being the only named defendant.  For example, defendant did not address plaintiff's state law claims in its motion for summary judgment.  Rather, defendant moved for summary judgment on the federal claim and moved the court to decline to exercise jurisdiction over plaintiff's state law claims.  Defendant asserts it would be unable to "avoid prejudice" if plaintiff is allowed to amend the pretrial order at this juncture.  With regard to disruption to the trial, defendant claims that adding new defendants at this point in the litigation would essentially require starting the case over. Defendant points out that neither individual has been represented by counsel throughout the litigation and neither has participated in the litigation nor developed their own defenses. Defendant concludes that if the individual deputies are added to the case as a result of granting plaintiff's motion to amend the pretrial order, then the individual deputies would have to be allowed to conduct discovery, file dispositive motions, and respond to filed motions (all of which deadlines have already passed) which would significantly delay disposition of the current case.

The policy behind the pretrial order mechanism is "the narrowing

-12-

of issues to facilitate an efficient trial and to avoid surprise." Cleverock Energy Corp. v. Trepel, 609 F.2d 1358, 1362 (10th Cir. 1979). Contrary to this policy, plaintiff seeks to significantly expand his case with the addition of two individual defendants. Plaintiff asserts that adding the two defendants will keep his case from being dismissed on a mere "technicality."[9] Contrary to plaintiff's belief, well settled legal principles are not mere technicalities. As the Tenth Circuit noted in Koch, "if the evidence or issue was within the knowledge of the party seeking modification of the pretrial order at the time of the pretrial conference then [modification] may not be allowed." 203 F.3d at 1217 (internal quotations and citations omitted). Plaintiff has not alleged that amendment of the pretrial order is necessary to prevent the occurrence of manifest injustice. Rather, plaintiff readily admits he seeks amendment of the pretrial order merely to prevent a judgment not in his favor. The prevention of manifest injustice is not concerned with counsel's desire to avoid an unfavorable ruling, and plaintiff's motion to amend the pretrial order is therefore DENIED.

## IV. CONCLUSION

Defendant's motion for summary judgment on plaintiff's section 1983 claims is GRANTED. Plaintiff's motion to amend the pretrial order is DENIED. Pursuant to United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966), the court declines to exercise pendent jurisdiction over plaintiff's state law claims. Therefore, these claims are dismissed as well. See Gibbs, 383 U.S. at 726 (stating that

---

[9] The court notes that the two deputies plaintiff seeks to add as defendants were involved only in the November 2004 incident.

-13-

"[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

A motion for reconsideration of this order under Local Rule 7.3 is not encouraged.  The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992).  Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.


IT IS SO ORDERED.

Dated this  3rd   day of October 2006, at Wichita, Kansas.


S/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

-14-